**KDG AUTO SALES, INC., T/A Wyncote Motors and Barry C. Portnoy, Appellees,**

v.

**ASTA FUNDING, INC., Appellant.**

Superior Court of Pennsylvania.

Argued May 15, 2001.

Filed July 31, 2001.

Mark W. Catanzaro, Moorestown, for appellant.

Kenneth M. Dubrow, Philadelphia, for appellees.

Before: DEL SOLE, President Judge, MONTEMURO * and KELLY, JJ.

DEL SOLE, President Judge.

¶ 1 Thomas Automotive Group, Inc. ("Thomas") operated a used car lot in Philadelphia. Principals from Thomas entered into an agreement with Barry Portnoy whereby Portnoy would provide financing for Thomas to purchase vehicles for resale or consignment. The business agreement provided that Portnoy would own the cars, but the title would be in Thomas's name. The agreement further provided that Portnoy would physically possess the titles until an authorized sale was made.

¶ 2 Several months later, Thomas entered into a separate agreement with Asta Funding, Inc. ("Asta"). This agreement provided that Asta would purchase retail installment contracts and security agreements for vehicles which were sold to consumers from Thomas's lot. Upon completion and approval of a credit application by a customer of Thomas, Asta would forward a check to Thomas. The purchaser would be obligated to make payments to Asta per an installment contract.

---

* Retired Justice assigned to the Superior Court. Justice Montemuro did not participate in the decision of this matter.

¶ 3 This litigation arises out of the sale of three cars. All were sold from Thomas's lot; all had been originally financed by Portnoy; all were financed to the consumers by Asta. Importantly, all were sold by Thomas without notice to or authorization by Portnoy, in contravention of the Portnoy–Thomas agreement.

¶ 4 When Portnoy became aware that Thomas had sold the cars without authorization, he contacted Asta. Asta refused to acknowledge Portnoy's interest in the cars or provide any information to Portnoy. Portnoy then, with Thomas's cooperation, transferred the titles to Wyncote Motors ("Wyncote") with Portnoy listed as first lienholder.

¶ 5 Asta was unable to obtain title to the cars in Pennsylvania. It obtained substitute title in Indiana, a "no-notice" state.[1] Two of the cars were repossessed and one was stolen. The proceeds of the insurance from the stolen car and the resale of the other two cars resulted in Asta's receipt of $33,144.

¶ 6 Wyncote and Portnoy filed suit against Asta. After a non-jury trial, the trial court entered judgment in favor of Wyncote and Portnoy in the amount of $28,429.50.[2] Asta moved for a judgment notwithstanding the verdict. The trial court denied the motion. Asta appeals.

¶ 7 The trial court found in favor of Portnoy and subsequently denied Asta's motion because it analyzed the facts and the applicable law as follows: Portnoy had an unperfected security interest in the cars from the time of Thomas's purchase of the cars. Asta obtained an unperfected security interest in the cars at the time of its financing of their purchase by the consumers. Portnoy then obtained a perfected security interest in the cars when the titles were filed in Pennsylvania listing him as primary lienholder. Thus, Portnoy's interest is superior because it was perfected. However, even if Portnoy failed to perfect, his interest was superior because, of the two unperfected security interests, Portnoy's was first in time.

¶ 8 We will reverse a trial court's denial of a judgment notwithstanding the verdict only when we find abuse of discretion or an error of law that controlled the outcome of the case. *Krasevic v. Goodwill Indus. of Cent. Pa., Inc.*, 764 A.2d 561 (Pa.Super.2000). While we appreciate the trial court's thoughtful analysis in this uniquely complicated situation, we find the facts require a different legal analysis.

¶ 9 Primary among our concerns is the status of the consumers in these transactions. Under Pennsylvania's version of the Uniform Commercial Code ("UCC"), these consumers are specially characterized as "buyers in the ordinary course of business." This term is defined at 13 Pa. C.S.A. § 1201, in pertinent part, as follows:

A person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.

¶ 10 There is no real question that the three consumers who purchased cars from Thomas were buyers in the ordinary

---

1. The trial court found Asta had obtained title to all three cars in Indiana. Trial Court Opinion, 1/19/01, at 8. While the record is unclear on this point, we will accept the trial court's finding for purposes of discussion because it has no bearing on our analysis.

2. The trial court provided no explanation for the specific amount of the judgment except to note that Asta was required to "renumerate an amount to Portnoy in proportion with his security interest." Trial Court Opinion, 1/19/01, at 23.

course of business.[3] The significance of this status is explained in 13 Pa.C.S.A. § 9307(a):

> A buyer in the ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

¶ 11 Thus, at the time of the consumers' purchase, their interest in the cars was free of Portnoy's unperfected security interest.[4] However, when the cars were out of the hands of the consumers, a new question arose as to the respective rights and interests of Portnoy and Asta in the cars. Both claimed to be entitled to full ownership benefits.

¶ 12 Portnoy argues that his security interest continued in both the cars and the proceeds of the cars pursuant to 13 Pa. C.S.A. § 9306(b). This section provides:

> CONTINUITY OF SECURITY INTEREST IN COLLATERAL AND IDENTIFIABLE PROCEEDS.—Except where this division otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof **unless the disposition was authorized by the secured party** in the security agreement or otherwise, and also continues in any

identifiable proceeds including collections received by the debtor.

13 Pa.C.S.A. § 9306(b) (emphasis added).

¶ 13 Pursuant to this subsection, Portnoy is correct that a security interest ordinarily continues in both the collateral and in the proceeds from the sale of the collateral. However, as emphasized above, this continued interest only exists where the sale of the property has not been authorized in any manner by the secured party. We find that Portnoy, despite his vehement argument to the contrary, tacitly authorized the sale of the collateral by entrusting the cars to Thomas.

¶ 14 Entrustment is a concept addressed in Section 2403 of the UCC. The full text of the section is as follows:

> Power to transfer; good faith purchase of goods; "entrusting".
>
> (a) TRANSFER OF TITLE.—A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

**3.** Portnoy argues, as to both Asta and the consumers, that none of them can be considered buyers in the ordinary course of business because they were on notice of a potential security interest in the cars when the titles were not immediately available at the time of the consumers' purchase. First, we question whether the absence of the actual title on the day of the sale is sufficient to raise any question of irregularity to the consumers. Secondly, even if we were to impute such sophistication to the consumers, 13 Pa.C.S.A. § 9307(a), as set forth *infra*, provides that a buyer in the ordinary course of business may have knowledge of a security interest created by the seller whereas 13 Pa.C.S.A. § 1201 prohibits a buyer in the ordinary course from

having actual knowledge that the sale is **in violation** of a security interest of a third party.

**4.** It is undisputed that Portnoy had an attached security interest in the cars from the time he financed them for Thomas. 13 Pa. C.S.A. § 9203. However, in Pennsylvania, a security interest in vehicles may only be perfected by the method outlined in 75 Pa.C.S.A. § 1131: filing a title containing a notation of the security interest with the Department of Transportation. At the time of the sale of the cars to the consumers, Portnoy had not filed a notation of his security interest with the Department.

(1) the transferor was deceived as to the identity of the purchaser;

(2) the delivery was in exchange for a check which is later dishonored;

(3) it was agreed that the transaction was to be a "cash sale"; or

(4) the delivery was procured through fraud punishable as larcenous under the criminal law.

(b) TRANSFER BY MERCHANT ENTRUSTED WITH POSSESSION OF GOODS.—Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(c) DEFINITION OF "ENTRUSTING".—"Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the disposition of the goods by the possessor has been such as to be larcenous under the criminal law.

(d) RIGHTS OF OTHER PURCHASERS AND LIEN CREDITORS.—The rights of other purchasers of goods and of lien creditors are governed by Division 7 (relating to documents of title) and Division 9 (relating to secured transactions).

13 Pa.C.S.A. § 2403.

¶ 15 Turning first to whether there has been an entrustment in this case, we examine the facts in light of 13 Pa.C.S.A. § 2403(c): the definition of "entrusting." There is no question that Thomas had possession of the goods and that Portnoy

was aware of that fact. In fact, the Portnoy–Thomas agreement specified the location of the cars. Although the Portnoy–Thomas agreement also specified that Thomas was not authorized to sell the cars without approval from Portnoy, entrusting occurs "regardless of any condition expressed between the parties . . . ." 13 Pa. C.S.A. § 2403(c). Thus, despite the explicit contractual language to the contrary, by permitting Thomas to possess the cars on his lot, Portnoy entrusted the cars to Thomas, and thus is bound by the provisions of 13 Pa.C.S.A. § 2403.[5]

¶ 16 We now turn to the effect of Portnoy's entrustment, specifically that provided in 13 Pa.C.S.A. § 2403(b). The plain language of this subsection establishes that upon entrustment, Thomas, as a merchant who deals in goods of that kind (used cars), had the power to transfer the rights of the entruster (Portnoy) to a buyer in the ordinary course of business. The consumers in this case **were** buyers in the ordinary course of business pursuant to 13 Pa. C.S.A. § 1201. Therefore, upon purchase from Thomas, these buyers received the ownership rights in the cars previously held by Portnoy.

¶ 17 Portnoy's security interest in the cars was discontinued upon their sale to buyers in the ordinary course of business. 13 Pa.C.S.A. § 2403(b). His security interest in the proceeds from the sale of those cars continued. 13 Pa.C.S.A. § 9306(b). However, that interest is a separate matter between Portnoy and Thomas.[6]

¶ 18 We conclude that because the buyers in the ordinary course of business took

---

5. The trial court made its primary error of law at this juncture, finding that no entrustment could have occurred because of the terms of the Portnoy–Thomas agreement.

6. Although it is not an issue in the case before us, we note that Portnoy may additionally have a viable, if possibly unenforceable, action against Thomas for breach of contract. Thomas, who is not a party to this litigation, is allegedly defunct.

ownership of the cars without respect to Portnoy's interest, so, too, did their finance company upon their respective defaults. If buyers in the ordinary course of business could not take full advantage of their heightened status and alienate the full measure of their interest as they choose, the benefit granted to them by 13 Pa. C.S.A. § 9307 would be illusory and limited in a manner not provided for in that statute or in the UCC. Thus, Asta is entitled to retain the sale/insurance values of the cars.

¶ 19 Order reversed. Case remanded for entry of judgment in favor of Asta. Jurisdiction relinquished.